**2023 IL 128123**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128123)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
ANDREW RAMIREZ, Appellant.

*Opinion filed May 18, 2023.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Neville, Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial in the circuit court of Cook County, defendant Andrew Ramirez was convicted of possession of a defaced firearm (720 ILCS 5/24-5(b) (West 2018)). On appeal, defendant challenged the sufficiency of the evidence on the basis that the State failed to prove beyond a reasonable doubt that he knew the serial number on the firearm was defaced. The appellate court affirmed, holding

that the State was required to prove only that defendant knowingly possessed the defaced firearm and not that he knew the firearm was defaced. 2021 IL App (1st) 191392-U, ¶¶ 27-28. For the following reasons, we reverse the judgment of the appellate court and remand the cause to the circuit court for further proceedings consistent with this opinion.

¶ 2                                    BACKGROUND

¶ 3        On May 10, 2018, at approximately 10:30 p.m., police executed a search warrant at a home located at 3234 South Komensky Avenue in Chicago. The police forcibly entered the residence after nobody answered. Once inside, officers saw defendant's mother at the bottom of the stairs and defendant descending from the second floor. Defendant was detained and subsequently allowed to return upstairs, where he retrieved his shoes from the foot of a single bed in one of the bedrooms.

¶ 4        After police searched the house, they recovered a 20-gauge Benelli shotgun, a Mossberg shotgun, a 9-millimeter handgun, and ammunition. The Benelli shotgun was recovered from under the mattress of the single bed in the room where defendant had retrieved his shoes. From the same bedroom, police recovered mail bearing defendant's name and the address of the home. At trial, Adolfus Bolanos, one of the officers who executed the warrant, testified that the serial number on the Benelli shotgun had been "scratched off."

¶ 5        Defendant was taken into custody, provided *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and made a statement. He told police that he bought the Benelli shotgun from a coworker for $100 and lunch.

¶ 6        The State proceeded to trial on a single count, charging defendant with possession of a 20-gauge Benelli shotgun whose serial number had been "changed, altered, removed or obliterated" in violation of section 24-5(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-5(b) (West 2018)). The Benelli shotgun recovered by police was not introduced at trial. The parties stipulated, however, that the serial number on the shotgun "had been changed, altered, removed, or obliterated." The State did not present any direct evidence that defendant knew that the shotgun's serial number was defaced. Defendant did not testify or call any witnesses.

¶ 7        In finding defendant guilty, the trial court stated:

   "I do believe that the State's evidence proves conclusively and beyond a
   reasonable doubt that [defendant] possessed that weapon. The next question is
   whether he had to have possessed it knowing that it had *** a defaced serial
   number. And pursuant to *People v. Lee*, [2019 IL App (1st) 162563], the State
   does not have to prove that. They only have to prove that he knowingly
   possessed the firearm and that the firearm had a defaced or obliterated serial
   number. There will be a finding of guilty."

¶ 8        The trial court subsequently denied defendant's posttrial motions and sentenced
him to two years' probation.

¶ 9        The appellate court affirmed the conviction and rejected defendant's contention
that the State failed to prove beyond a reasonable doubt that he knew the serial
number on the firearm was defaced. 2021 IL App (1st) 191392-U, ¶¶ 27-28. Based
upon *People v. Stanley*, 397 Ill. App. 3d 598 (2009), and its progeny, the court
concluded that the State was required to prove only that defendant knowingly
possessed the defaced firearm and not that he knew that the firearm was defaced.
2021 IL App (1st) 191392-U, ¶ 21. Viewing the evidence presented at trial in the
light most favorable to the State, the court concluded that a reasonable trier of fact
could find that defendant constructively possessed the defaced firearm that was
recovered by police. *Id.* ¶ 23.

¶ 10       We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct.
1, 2021).

¶ 11                                    ANALYSIS

¶ 12       Defendant contends that, to secure a conviction under section 24-5(b) of the
Code, the State was required to prove that he knew the firearm was defaced. He
asserts that his conviction must therefore be reversed because the State failed to
prove beyond a reasonable doubt that he knew the serial number on the Benelli
shotgun was defaced.

¶ 13       In addressing defendant's sufficiency of the evidence argument, this court must
analyze the underlying provision of the Code. Our primary objective when

construing a statute is to ascertain the intent of the legislature and give effect to that intent. *People v. Molnar*, 222 Ill. 2d 495, 518 (2006). The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. *People v. Woods*, 193 Ill. 2d 483, 487 (2000). Statutes must be read as a whole, and all relevant parts should be considered. *People v. Reed*, 177 Ill. 2d 389, 393 (1997). This court may not depart from the language of the statute by interjecting exceptions, limitations, or conditions tending to contravene the purpose of the enactment. *People v. Martinez*, 184 Ill. 2d 547, 550 (1998). Our review of matters of statutory interpretation is *de novo*. *Id.*

¶ 14        Section 24-5 of the Code is titled "Defacing identification marks of firearms." 720 ILCS 5/24-5 (West 2018). Subsection (a) criminalizes the changing, altering, removing, or obliterating of the serial numbers placed on any firearm by the manufacturer or importer as a Class 2 felony. *Id.* § 24-5(a). The mental state applicable to subsection (a) is specified as "knowingly or intentionally." *Id.* Defendant was convicted of possession of a defaced firearm in violation of subsection (b), which provides: "A person who possesses any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated commits a Class 3 felony." *Id.* § 24-5(b).

¶ 15        This court has not previously addressed whether possession of a defaced firearm requires proof of a *mens rea* or whether the element(s) of section 24-5(b) include both possession and defacement. The parties agree that, in contrast to subsection (a), subsection (b), as written, contains no specific *mens rea* requirement. They further agree that section 24-5(b) does not constitute an absolute liability offense.

¶ 16        Defendant asserts that knowledge of the defacement is, and must be, an element of the offense. Otherwise, innocent conduct could be criminalized, and a person who is unaware that a firearm's identification marks have been defaced could be convicted of a Class 3 felony. The State, however, relying upon *Stanley* and cases that followed it, contends that knowledge of the firearm's defacement is not an element of the offense. Instead, the State argues that section 24-5(b) should be interpreted by this court as requiring proof of "(1) knowing possession of a firearm and (2) a defaced firearm."

¶ 17        In *Stanley*, the defendant argued that the State failed to prove him guilty of violating section 24-5(b) because there was no proof of his knowledge that the

marks had been scratched off the shotgun that he possessed. *Stanley*, 397 Ill. App. 3d at 603. Alternatively, he argued that if the statute did not require proof of a mental state, thereby imposing absolute liability, it would be unconstitutional as tending to criminalize innocent conduct without a showing of a culpable mental state. *Id.* After recognizing that the statute made no reference to a *mens rea* requirement, the court examined the statutory guidelines in section 4-3 of the Criminal Code of 1961 (720 ILCS 5/4-3 (West 2006)), which provides the default rules for a culpable mental state. *Stanley*, 397 Ill. App. 3d at 605. Noting that the legislature can create absolute liability for a felony, but only if it clearly indicates its intent to do so, the appellate court recognized that such intent would not be inferred from the mere absence of a *mens rea* requirement in the statute. *Id.* at 605-07 (citing 720 ILCS 5/4-9 (West 2006)). The court found that section 24-5(b) contained no such clear statement of intent. *Id.* at 607.

¶ 18    To avoid absolute liability, the *Stanley* court found that a *mens rea* must be inferred into section 24-5(b) and concluded that the provision required the defendant's knowing possession of the firearm. *Id.* The court ultimately held the knowledge requirement of the statute applied only to the possessory component of the offense. *Id.* at 608. In reaching this holding, the court stated:

> "[W]e discern that the elements of this offense are properly the *mens rea* and the possession, that is, the State must prove the knowing possession of the defaced firearm by defendant. The State, however, need not prove knowledge of the character of the firearm. Though the defacement unmistakably bears upon the commission of the offense, it is not an element of the offense." *Id.* at 609.

¶ 19    Consequently, under *Stanley*, a defendant who knowingly possesses a firearm takes the weapon as he finds it, and if it turns out to be defaced it will constitute a violation of section 24-5(b), regardless of whether there was knowledge of the defacement. Our appellate court has reaffirmed *Stanley*, and its reasoning, in subsequent cases. See, *e.g.*, *People v. Lee*, 2019 IL App (1st) 162563; *People v. Falco*, 2014 IL App (1st) 111797.

¶ 20    In construing the provision before us, section 4-9 of the Code, "Absolute Liability" is instructive. This section provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4-4 through 4-7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $1,000, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4-9 (West 2018).

¶ 21    This court has instructed that the severity of the potential punishment is a critical factor in ascertaining whether the legislature intended to create an absolute liability offense. *People v. Sroga*, 2022 IL 126978, ¶ 20. That is because " ' "[i]t would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly." [Citation.] Therefore, "where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense." [Citations.]' [Citation.]" *Id.* As the *Stanley* court correctly concluded and the parties agree, there is no clear legislative intent to make a violation of section 24-5(b), a Class 3 felony, an absolute liability offense, and thus a *mens rea* must be inferred into the statute.

¶ 22    Pursuant to the Code, when a statute neither prescribes a particular mental state nor creates an absolute liability offense, then either intent, knowledge, or recklessness applies. See 720 ILCS 5/4-3(b), 4-4, 4-5, 4-6 (West 2018). Here, section 24-5(b) is unmistakably a possessory offense, and this court has previously held that, when a possessory offense does not prescribe a particular mental state and is not an absolute liability offense, knowledge is the appropriate mental state. See *People v. Gean*, 143 Ill. 2d 281, 288-89 (1991). For this mental state, section 4.5 of the Code provides, in pertinent part, that a person knows or acts knowingly or with knowledge of:

"(a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5 (West 2018).

¶ 23    Under section 24-5(b), the State must prove defacement in order to secure a conviction. The fact of the defacement is what makes the possession of the firearm a crime. We find this essential fact is, and must be, an element of the offense.

Section 4-3(b) of the Code provides that if a statute prescribes a mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element. *Id.* § 4-3(b). Accordingly, we hold that section 24-5(b)'s implied *mens rea* of knowledge must apply to both elements of the offense, possession and defacement.

¶ 24    As Justice Ellis wrote in his special concurrence in *Lee*, such an interpretation is necessary to draw a line between lawful and unlawful conduct under the statute. See *Lee*, 2019 IL App (1st) 162563, ¶ 87 (Ellis, J., specially concurring). If section 24-5(b) did not require knowledge of defacement, "the defendant's otherwise innocent conduct (knowingly possessing a firearm) would be transformed into a felony by a circumstance (the defacement) of which he was unaware." *Id.* Consequently, to avoid imposing absolute liability, the statute must be construed to require proof that the defendant knew the firearm was defaced. *Id.* We therefore overrule *Stanley* and its progeny, which erroneously interpreted section 24-5(b) to require only proof of knowledge of the possession for the State to meet its burden.

¶ 25    Our interpretation of section 24-5(b), requiring proof of knowledge of both possession and defacement, is consistent with the reasoning we applied in *Gean* when interpreting the "chop shop" statute at issue. *Gean*, 143 Ill. 2d at 287-88. There, this court construed two different Class 4 felony provisions. *Id.* at 288. The first provision prohibited possession "without authority" of certain Illinois Vehicle Code items (such as certificates of title or salvage certificates (Ill. Rev. Stat. 1987, ch. 95½, ¶ 4-104(b)(1))). *Gean*, 143 Ill. 2d at 283. The second provision prohibited possession of these same items " 'without complete assignment.' " *Id.* at 283-84 (quoting Ill. Rev. Stat. 1987, ch. 95½, ¶ 4-104(b)(2)). Neither provision included an explicit *mens rea* requirement. *Id.* at 287. Due to the lack of a clear legislative intent and the severe penalties applicable to violations of the two sections, we found that neither were absolute liability offenses and that a *mens rea* of knowledge would be inferred. *Id.* at 288. After inferring a knowledge requirement into each subsection, we held that the State had to prove that the defendant possessed these certificates of title and salvage certificates knowing that he did not have authority or knowing it was without complete assignment. *Id.* at 289. In other words, similar to our construction here, the State had to prove that the defendant in *Gean* knew that his possession of the certificate was "without authority" under one subsection

and that the defendant knew that the certificates he possessed were "without complete assignment" in the other subsection.

¶ 26    We further find that our construction of section 24-5(b) is necessary to avoid this provision impermissibly burdening the federal constitutional right to keep and bear arms. A statute that criminalizes the knowing possession of a firearm, without more, would run afoul of the second amendment. See *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Bruen*, the Court instructed, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30.

¶ 27    It has long been recognized that defaced firearms are uniquely suited for use in the commission of crimes. See *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010). Firearms that have been defaced so that they are untraceable by law enforcement, thus, are not covered by the plain text of the second amendment because they are not typically used by law-abiding citizens for lawful purposes. *Heller*, 554 U.S. at 625 ("the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"); see, *e.g.*, *United States v. Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) (holding that the second amendment does not extend to firearms with obliterated serial numbers because such firearms are not typically possessed by law-abiding citizens for lawful purposes). We conclude that construing section 24-5(b) to include a *mens rea* requirement that a defendant know the firearm is defaced also ensures that the provision comports with the second amendment.

¶ 28    Finally, defendant contends that this court should reverse his conviction outright because there was no evidence presented at trial that he knew the Benelli shotgun was defaced. In the alternative, he maintains that his conviction should be reversed and remanded for a new trial because the trial court misapprehended the law when it erroneously stated that the prosecution was not required to prove that he knew the serial number on the firearm was defaced. Defendant argues that this

error was not harmless, as the State claims, because the prosecution presented no evidence of his knowledge of the defacement.

¶ 29 "The double jeopardy clause does not preclude retrial of a defendant whose conviction is overturned because of an error in the trial proceedings leading to the conviction." *People v. Casler*, 2020 IL 125117, ¶ 57. "[A] second trial is permitted when a conviction is reversed because of a posttrial change in law. Such a reversal is analogous to one for procedural error and therefore does not bar retrial." *Id.*

¶ 30 At the time of defendant's trial, binding precedent from the First District provided that the State did not have to present evidence that a defendant knew a firearm was defaced. The trial court, in finding defendant guilty, specifically recognized this precedent and found that the State "only ha[s] to prove that he knowingly possessed the firearm and that the firearm had a defaced or obliterated serial number." The State asserts that, had it known of the need to establish that defendant knew the shotgun was defaced, it might, *inter alia*, have introduced photographs of the shotgun showing that the defacement was so clear that it could not have escaped defendant's notice.

¶ 31 Under the circumstances in this case, we find the proper remedy is to remand for a new trial, where the State would have the opportunity to prove defendant knew the firearm was defaced as required by this court's construction of section 24-5(b).

¶ 32                                    CONCLUSION

¶ 33 For the foregoing reasons, we reverse the judgments of the appellate court and the circuit court and remand the cause to the circuit court for further proceedings.

¶ 34 Judgments reversed.

¶ 35 Cause remanded.