2023 IL App (1st) 231770
No. 1-23-1770B
Opinion filed December 12, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 2023200138301 |
| CARLOS CLARK, | ) ) ) | The Honorable Anthony Calabrese, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice C.A. Walker concurred in the judgement and opinion.
Justice Tailor dissented, with opinion.

**OPINION**

¶ 1     Timing is everything in life and law. The State timed the filing of its petition to detain

Carlos Clark to coincide with the effective date of article 110 of the Code of Criminal Procedure

of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan.

1, 2023), commonly known as the Pretrial Fairness Act. But the Code strictly limits the timing of

these petitions, notably when the State already agreed that the trial court should set bail.

¶ 2    At the first appearance, the State secured an *ex parte* order permitting Clark's possible release by setting a bail amount. This earlier choice rendered its later petition to detain too late. We reverse the trial court's order detaining Clark and remand for the trial court to reinstate its prior conditions of release. We express no opinion on a future ruling by the trial court if properly presented under the Code on whether to detain Clark.

¶ 3                                   Background

¶ 4    At the State's behest, about a month before the Pretrial Fairness Act became effective, the trial court signed an order permitting Carlos Clark's arrest and fixing his bail at $100,000 D. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1 (noting neither "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" nor "Pretrial Fairness Act" are "official" names but common shorthand for the sequence of public acts). The trial court had acted in response to the State filing a felony complaint that day charging Clark with aggravated vehicular hijacking (720 ILCS 5/18-4(a)(1)) (West 2022).

¶ 5    The name of an assistant state's attorney appears on the felony complaint, as does the signature of the judge who found probable cause to arrest Clark. Although not legible, a prosecutor's signature also appears alongside the trial court's signature on the order permitting Clark's arrest and setting bail. The felony minute sheet, filed the same day as the complaint and trial court order, additionally laid out the alleged facts of three more possible offenses, unlawful restraint, aggravated fleeing, and retail theft. (The dissent overlooks this portion of the record when asserting "we do not know what evidence was presented" to the trial court. *Infra* ¶ 37.) The felony minute sheet also noted Clark's then-current custody in McHenry County.

¶ 6 About three weeks later, the State executed the Cook County arrest warrant. Two days after that, on the Act's effective date, the State petitioned to detain Clark. The trial court held a hearing that day, with Clark appearing for the first time.

¶ 7 Clark objected to the hearing. In his view, the Code did not permit the State to petition to detain him. He contended the Code permitted him, and only him, to seek review of the set conditions of release and offered no grounds for the State to now petition for his detention. In response, the State objected to having "no opportunity to file any conditions on this case[.]" The State contended that the Code permitted it to move to detain Clark during Clark's first appearance before the trial judge, so its petition was proper.

¶ 8 The trial court, the second judge to preside over this case, found:

> I don't know what was or was not said to [the first judge] at the time of the issuance of the warrant. A warrant was issued for defendant's arrest in the amount of $100,000 D. I can't speak to what happened then. I believe that the issuance of the warrant is a mechanism by which the defendant is compelled to appear before a court.

> Typically, what happens is once those warrants are executed and defendants appear in front of me, I then make a determination as to whether probable cause exists. I listen and review the case in its entirety for purposes of setting a fair bond that includes setting any conditions that might be relevant, any concern, and it includes an in-depth consideration of all the factors from both sides, then I'll be able to have an opportunity to make an appropriate decision in this case.

Before today's date no hearing has been held. This is the first time the defendant is appearing. There is no opportunity for conditions to be filed and for an assessment to be able to be made as to what is or isn't an appropriate condition of release for the defendant.

I believe the State is well within their right given these unique circumstances on the first appearance after the issuance of a warrant and appearance off that warrant to be able to go forward with the [] Act and have a determination made as to whether or not the defendant should be detained, so over the Defense's objection, I am going to allow the detention hearing.

¶ 9　The trial court held the detention hearing, denied pretrial release, and issued a written order.

¶ 10　　　　　　　　　　　　　　　　Analysis

¶ 11　Clark contends the Code, as amended by the Pretrial Fairness Act, offers the State no grounds for petitioning to detain those like him, whom the trial court ordered released at the start of the prosecution and before the Act's effective date. The State responds that the Code permitted what it did: petition to detain Clark during his first appearance before trial court.

¶ 12　The parties' dispute requires us to interpret a statute, presenting legal questions that we review *de novo*. *People v. Ramirez*, 2023 IL 128123, ¶ 13. We read the statute in full, not piecemeal. *Ramirez*, 2023 IL 128123, ¶ 13. We determine the statute's meaning by discerning the plain and ordinary meaning of its words. *Id.* And we do not add exceptions, limitations, or conditions that would contradict the legislature's intent. *Id.*

¶ 13　The parties agree their dispute turns, in part, on section 110-6.1(c), which controls the timing for filing petitions to detain. 725 ILCS 5/110-6.1(c) (West 2022). The parties focus on the meaning of the phrase "the first appearance before a judge," as that phrase appears in subsection

110-6.1(c)(1) (West 2022). Clark contends that phrase includes *ex parte* hearings at which the State initiates the prosecution and seeks bail. The State argues that phrase excludes hearings at which only the State appears and thus requires the defendant to appear as well.

¶ 14    We begin with the full text of section 110-6.1(c), which contains two subsections, and italicize its use of the word *appearance*. Under subsection (c)(1),

> A petition may be filed without prior notice to the defendant *at the first appearance before a judge*, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained.

The State reads this section as "at the [defendant's] first appearance before a judge." Under subsection (c)(2),

> Upon filing, the court shall immediately hold a hearing on the petition unless a continuance is requested. If a continuance is requested and granted, the hearing shall be held within 48 hours of *the defendant's first appearance* if the defendant is charged with [certain class offenses], and within 24 hours if the defendant is charged with [other class offenses]. The Court may deny or grant the request for continuance. If the court decides to grant the continuance, the Court retains the discretion to detain or release the defendant in the time between the filing of the petition and the hearing.

Read together, section 110-6.1(c) uses two different phrases, suggesting a distinction between the terms "the first appearance before a judge" (subsection (c)(1)) and "the defendant's first appearance" (subsection (c)(2)).

¶ 15    The State rejects any distinction, contending it properly petitioned to detain Clark under subsection (c)(1) because "first appearance * * * refers to the first time a *defendant* appears before a judge[.]" (Emphasis in original.) The State argues this court has "recently and repeatedly held" " the plain language of this subsection [permits it to] file a petition to detain at the time of the defendant's first appearance before a judge." (Internal quotation omitted.) (citing *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 16 and *People v. Rios*, 2023 IL App (5th) 230724, ¶ 10). We disagree.

¶ 16    The State's reading limits subsection (c)(1)'s reach by adding the word "defendant's" to the phrase "the first appearance before a judge." We may not add terms that contravene legislative intent. *Ramirez*, 2023 IL 128123, ¶ 13. Here, the legislature envisioned a process where the State and trial court need not wait for a defendant's appearance before considering whether to detain that person without setting bail. 725 ILCS 5/110-6.1(c)(1) (West 2022). This process may occur "without prior notice to the defendant[.]" 725 ILCS 5/110-6.1(c)(1) (West 2022). As Clark suggests, this process tracks the longstanding practice of seeking a "no bond arrest warrant" for certain defendants. See 725 ILCS 5/110-4 (superseded by Act).

¶ 17    Under subsection (c)(1), "the first appearance before a judge" includes, as here, an *ex parte* appearance by the State to begin the prosecution by filing a felony complaint and then seek an order setting bail. Generally, "appearances" include parties to the litigation. See APPEARANCE, Black's Law Dictionary (11th ed. 2019) (defining "appearance" as "coming into court as a party or interested person, or as a lawyer on behalf of a party or interested person"). The State points to nothing in the text of the Code supporting an interpretation of "appearance" that excludes the State's actual appearance before a trial judge to begin the prosecution and seek bail.

¶ 18     Nor do the State's citations to *Vingara* and *Rios* persuade us otherwise. Contrary to the State's assertions, neither *Vingara* nor *Rios* "held" that the State's reading of the Code was correct. Both defendants in *Vingara* and *Rios* personally appeared when the trial courts set their bails (*People v. Vingara*, 2023 IL App (5th) 230698, ¶ 3; *People v. Rios*, 2023 IL App (5th) 230724, ¶ 3). Moreover, neither opinion analyzed subsection (c)(1)'s application to *ex parte* bail hearings at the beginning of the prosecution.

¶ 19     Indeed, in *dicta*, the panels in *Vingara* and *Rios* asserted without analysis that subsection(c)(1)'s text, "the first appearance before a judge," meant the *defendant's* first appearance before a judge. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 16 ("Under the plain language of this subsection, the State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required."); *People v. Rios*, 2023 IL App (5th) 230724, ¶ 10 ("The plain language of this section sets forth the deadline for the State to file a petition to detain. The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required."). For the reasons we gave, we reject the idea that the "plain language" of subsection (c)(1) further excludes *ex parte* hearings where the State begins the prosecution and seeks bail.

¶ 20     The State's petition to detain was untimely under section 110-6.1(c) for two reasons. First, as noted, the State did not seek to detain Clark when it began this prosecution at the first appearance. The State instead sought bail of $100,000 D. Second, the State could not avail itself of the Code's 21-day extension, having failed to provide "reasonable notice" of its intent to detain. The State petitioned to detain Clark the same day he first appeared, and the court immediately overruled Clark's objection to proceeding. 725 ILCS 5/110-6.1(c)(1) (West 2022). Even more

essential, Clark has remained in custody since his arrest. Thus, no "arrest and release" has triggered the 21-day extension. 725 ILCS 5/110-6.1(c) (1) (West 2022).

¶ 21    As this matter stands, the State improperly petitioned to detain Clark, and he remains entitled to the conditions of bail the trial court set when the State began this prosecution. We express no opinion on the merits to detain Clark if the State properly raises it (see 725 ILCS 5/110-6.1(c)(1) (West 2022) (permitting State 21-day extension to file petition to detain)), or the trial court properly considers it, (725 ILCS 5/110-7.5(b), 5(e) (West 2022) (permitting trial court to "reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release")). These other opportunities, which the dissent overlooks to assert this opinion will leave the State "powerless" (*Infra* ¶¶ 36-37), could result in Clark's pretrial detention.

¶ 22    Reversed and remanded.

¶ 23    JUSTICE TAILOR, dissenting:

¶ 24    The majority holds that because the trial court set bond when it issued an arrest warrant for Clark on the State's *ex parte* application three weeks before the Pretrial Fairness Act became effective, the State was precluded from seeking Clark's detention when he appeared in court on the warrant for the first time on September 18, 2023, the day the change to the Code went into effect. I respectfully disagree.

¶ 25    On August 23, 2023, a felony complaint was filed in this case alleging that Clark committed the offense of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(1) (West 2022) on August 6, 2023, when he "knowingly took a motor vehicle, a 2009 Honda CRV * * * from the person of

[victim 1], a person 60 years of age or over, by the use of force. All occurred in the State of Illinois, County of Cook, Village of Northbrook." The complaint was signed and sworn to by Detective Ochab, and was also signed by Judge Gemskie, who found probable cause to arrest. On the same day, Judge Gemskie issued a warrant for Clark's arrest and set bond at $100,000 D. The felony minute sheet states that the sole charge against Clark is aggravated vehicular hijacking and recites a narrative of the incident. The half sheet from that day also shows the only charge against Clark was aggravated vehicular hijacking and includes the notation, "FPC (G). WTI $100,000D." Presumably, the acronym "FPC" stands for "finding of probable cause," "(G)" stands for "granted," and the acronym "WTI" stands for "warrant to issue."

¶ 26    Clark had been arrested by the Crystal Lake police department on August 9, 2023, and was being held in McHenry County on an unrelated offense. Clark was arrested in this case on September 16, 2023. On September 17, 2023, the day before Clark appeared in court on this case, two additional complaints were sworn to by Illinois State police Trooper Sanchez, one for aggravated fleeing, (625 ILCS 5/11-204.1 (West 2022)), and the other for unlawful restraint (720 ILCS 5/10-3-A (West 2022)). One complaint alleged that Clark committed the offense of aggravated fleeing on August 6, 2023, when he was "the driver or operator of a vehicle, who have [sic] been given a visual or audible signal by a peace officer, to wit: ISP, directing him to bring his vehicle to a stop, failed to obey such direction[,] increased his speed or otherwise attempted to elude the officer" in violation of section 5/11-204.1 of the Illinois Vehicle Code (625 ILCS 5/11-204.1 (West 2022)). The other complaint alleged that on August 6, 2023, Clark committed the offense of unlawful restraint in that he "knowingly and without legal justification detained [victim

2]" in violation of section 5/10-3-A of the Criminal Code of 1961 (720 ILCS 5/10-3-A (West 2022)).

¶ 27     On September 18, 2022, when Clark appeared in court, the public defender was appointed to represent him. The two additional complaints sworn to by ISP Trooper Sanchez were filed with the court. The State also moved to amend the complaint for aggravated vehicular hijacking. Clark waived "re-swearing and re-verification of the complaints as amended." The court then informed Clark of the allegations in the complaint filed against him for aggravated vehicular hijacking on August 23, 2023, and the complaints for aggravated fleeing and unlawful restraint filed on September 18, 2023. Clark indicated that he understood.

¶ 28     The State then filed a petition for pretrial detention. Defense counsel objected to the petition and argued that Judge Gemskie already set bond at $100,000 when she issued the warrant on August 23, 2023. According to Clark, the Pretrial Fairness Act did not allow the State to seek review of the previously imposed conditions of release–the $100,000 D bond–which was set when the warrant was issued on August 23, 2023, on the State's complaint for aggravated vehicular hijacking. The State argued that the Pretrial Fairness Act allowed it to move to detain Clark during his first appearance in court without prior notice and that the bond set in conjunction with the warrant was solely to secure Clark's first appearance in court to answer the charges against him.

¶ 29     The court rejected Clark's argument and allowed the hearing to proceed "given the unique circumstances on the first appearance after the issuance of a warrant." The court reasoned that, "[b]efore today's date no hearing has been held. This is the first time the defendant is appearing. There is no opportunity for conditions to be filed and for an assessment to be able to be made as to what is or isn't an appropriate condition of release for the defendant." The State then asked the

court for Clark to be detained and for pretrial conditions and read a proffer containing the following specific facts of each alleged offense into the record.

"At approximately 6:25 p.m. on August 6th, Victim 1 who is a 67-year-old female parked her silver Honda CRV in the shared parking lot outside of CVS located at 936 Willow Road. Victim 1 locked her car, but left her window slightly ajar before entering the store. When Victim 1 returned, she noticed something in the back seat of the Honda. As she unlocked the vehicle and opened the driver's side door, the Defendant Carlos Clark moved from the back seat to the front seat and grabbed Victim 1's car key from her hand. The Defendant then attempted to grab Victim 1's purse as well. The Defendant told Victim 1 that he would shoot her if she did not give him her purse. Victim 1 continued to fight back and the defendant eventually gave up, reentered Victim 1's vehicle without the purse and drove away.

Victim 1 immediately returned to the CVS and notified the cashier what happened and called the police.

\* \* \*

At approximately 8:08 p.m. on August 6th, the Defendant entered the back of a BP gas station located at 43rd and Wentworth in Chicago, Cook County, Illinois, in Victim 1's silver Honda CRV. The defendant started speaking to individuals about selling them cologne and perfume. Victim 2 works at the BP gas station and walked over to the Defendant to ask about the colognes he was selling.

The Defendant told Victim 2 that he had additional products in his vehicle and invited Victim 2 to look. Victim 2 entered the vehicle and closed the door. The Defendant then entered the driver's seat and sped away with Victim 2 in the vehicle.

There were ISP squad cars in the parking lot when the Defendant pulled away.

These events are recorded on surveillance video.

The Defendant proceeded onto the highway while violating numerous traffic control devices while being pursued by ISP troopers including a right turn on red without stopping at the intersection of 43rd and Wentworth, two lane violations over solid white lines, speeding upwards of 110 miles per hour in a marked 55 miles per hour zone. Victim 2 repeatedly begged the defendant to pull over and let him out, but the Defendant refused telling Victim 2 to be quiet or he would kill him while gesturing towards his waistband.

The Defendant ran a red light at 71st Street and Lafayette which caused an accident where the vehicle was struck by oncoming traffic.

The Defendant exited the vehicle and ran off on foot making good on his escape. A critical search was done based on surveillance which revealed that the defendant was on Electronic Monitoring for a possession of stolen motor vehicle out of the District 5. The Electric Home Monitoring GPS placed the Defendant at the ULTA, CVS, and BP gas station at this [sic] times reported.

The Defendant was arrested by Crystal Lake PD on August 9th, 2023, for a retail theft. Fingerprints were taken from the stolen motor vehicle and the boxes of perfume which came back to the defendant.

Photo lineups were provided to Victim 1 and Victim 2 on August 15th, 2023.

Both Victim 1 and Victim 2 identified the defendant."

¶ 30    The court then heard from a pretrial services representative who went over their assessments and informed the court that Clark was a "six" on a scale of one to six for new criminal activity. On the failure to appear scale of one to six, Clark was a "five." The court noted the assessment showed seven aggravating factors including Clark's age, prior failures to appear in court, prior felony convictions, and pending charges at the time of these offenses.

¶ 31    The majority concludes that the detention hearing was improper. It finds that when the State filed a criminal complaint and obtained a warrant for Clark's arrest that set a bond on August 23, 2023, an *ex parte* detention hearing was held, effectively releasing Clark "at the start of the prosecution and before the Act's effective date." Supra, ¶11. Based on this finding, the majority has determined that the State improperly petitioned to detain Clark on September 18, 2023, because the petition was untimely under section 5/110-6.1(c).

¶ 32    Section 5/110-6.1(c)(1), which went into effect on September 18, 2023, the day Clark first appeared in court in this case, states in relevant part: "A petition may be filed without prior notice to the defendant at the first appearance before a judge ***." (emphasis added). 725 ILCS 5/110-6.1(c)(1) (West 2022). Subsection (c)(2) then states that, "[u]pon filing, the court shall immediately hold a hearing on the petition unless a continuance is requested. If a continuance is requested and granted, the hearing shall be held within 48 hours of the defendant's first appearance ***." (emphasis added). *Id*. 110-6.1(c)(2) (West 2022).

¶ 33    Drawing on the difference in the "appearance" language in subsections (c)(1) and (c)(2), the majority concludes that the "first appearance before a judge" language in subsection (c)(1) encompasses the State's initial *ex parte* appearance before the court to obtain a warrant for Clark's

arrest, where the court also set bond at $100,000D. Therefore, according to the majority, the State could not petition the court under subsection (c)(1) to detain him when Clark first appeared in court on the warrant on September 18, 2023.

¶ 34 Two principals of statutory construction inform the resolution of this appeal. First, when interpreting a statute, courts should consider a statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). Second, the primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results. *In re Madison H.*, 215 Ill. 2d 364, 372 (2005).

¶ 35 When subsection (c)(1) is read in conjunction with subsection (c)(2), the most reasonable construction of the "first appearance before a judge" language in subsection (c)(1) is that it means the first appearance before a judge at which the defendant is present. See *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 16 ("Under the plain language of this subsection [5/110-6.19(c)(1)], the State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required"); *People v. Rios*, 2023 IL App (5th) 230724, ¶ 10 ("The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required"). Prior to Clark's arrest on the warrant, there would have been no reason for the State to file a petition to detain him. Thus, subsection (c)(1) authorized the State to petition the Court to detain Clark on his first appearance after his arrest without providing him with notice of the petition.

¶ 36 Moreover, when the State applied for a warrant for Clark's arrest, it obviously did not file a petition under subsection (c)(1) to detain him because the change to the Code had not yet gone

into effect. *Cf. People v. Houts*, 2023 IL App (5th) 230715-U, ¶ 13 (The State's petition to detain pursuant to section 110-6.1 after the Act went into effect was untimely because the State did not file the petition to detain at defendant's first appearance four months earlier when the defendant was present and bond was set). Therefore, the majority's conclusion that the State exhausted its one opportunity under subsection (c)(1) to detain Clark without notice when it obtained *ex parte* a warrant for his arrest that set a bond is flawed. I would presume that the legislature did not intend to create this absurd result and therefore would find that the State's petition to detain was not untimely under section 5/110-6.1(c)(1).

¶ 37    Even assuming that the majority's interpretation of section 5/110-6.1(c)(1) is correct, the untimeliness of the petition to detain is not grounds for reversal in this case. Under the majority's interpretation, the State would be powerless to seek detention on a defendant's first appearance in court when a warrant had been previously issued and bond been set, in this case or any other, regardless of what occurred between the time the court issued the arrest warrant and set bond and the defendant first appeared in court. The trial court correctly recognized that we do not know what evidence was presented to Judge Gemskie or how she arrived at the $100,000 D bond set in the warrant. We do not know whether Judge Gemskie was equipped with the necessary information to engage in the fulsome analysis that a detention hearing demands. Presumably Judge Gemskie did not have before her a representative from pretrial services and did not know that Clark scored a "six" on a scale of one to six for assessment of new criminal activity and a "five" out of six for assessment of failure to appear. What we do know is the only felony complaint before her at the time was for aggravated vehicular hijacking, which was subsequently amended on September 18, 2023, the day Clark appeared in court after being arrested on the warrant. The additional felony

complaints for aggravated fleeing and unlawful restraint were sworn to on September 17, 2023, and filed in the circuit court the following day. The unlawful restraint complaint involved a different alleged victim. We know that Judge Gemskie did not consider these charges when she set bond on August 23, 2023. We also know that the hearing on August 23, 2023, had none of the hallmarks of a detention hearing because, among other reasons, Clark was not present and was not given the opportunity to testify, present witnesses, or offer information by proffer or otherwise. See *American Bar Association,* Standard 10-5.10 (prescribing detailed procedures for pretrial detention hearings, judicial orders for detention, and appellate review). Under the majority's view, the State could not seek Clark's detention when he first appeared in court even though no detention hearing had previously been held and Clark had been charged with new offenses that were not considered by the court on August 23, 2023, when the warrant was issued and bail was set on the aggravated vehicular hijacking complaint.

¶ 38    For the foregoing reasons, I would affirm the trial court. Therefore, I respectfully dissent.

No. 1-23-1770B

---

***People v. Clark*, 2023 IL App (1st) 231770**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23200138301; the Hon. Anthony Calabrese, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Rebecca Cohen, Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Jessica R. Ball, Assistant State's Attorney, of counsel), for the People. |

---