2026 IL App (1st) 260457-U
No. 1-26-0457B
Order filed June 29, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 26 MC 1101546 |
| | ) | |
| KEITH DAVIS | ) | The Honorable |
| | ) | Anthony John Calabrese |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.

**Order**

¶ 1     *Held*: Affirmed. The circuit court properly found that pretrial detention was necessary.

¶ 2     Keith Davis appeals the denial of his motion for relief from pretrial detention under section 110-6.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Acts 101-652, § 10-255, and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). We affirm, finding Davis's contentions unsupported by both the law and the record.

¶ 3                                Background

¶ 4     The State petitioned to detain Keith Davis, who, along with two others, allegedly battered a man at a CTA station one snowy Sunday morning.

¶ 5     The State proffered that a man threw up his arms in frustration at Davis's wife, who had stopped her car outside a CTA station in an intersection the man was trying to cross. They exchanged words, and Davis's wife, who is a co-defendant, called the man a slur and threw a cup of iced coffee at the back of his head. As the man moved to photograph her license plate with his cell phone camera, she backed her car into him, causing him to scream in pain.

¶ 6     An uncharged co-defendant appeared and began striking the man in the face with a closed fist. The man retreated into the CTA station, and the uncharged co-defendant followed. He continued to punch the man, grab the man's backpack, and try to take the man's cell phone. The man tossed his phone, which a witness recovered. The uncharged co-defendant then began hitting the man with his own backpack; Davis approached and repeatedly struck the man in the face with a closed fist.

¶ 7     Surveillance cameras captured the entire incident. The man identified the uncharged co-defendant. Police identified Davis and his wife. The man lost all the data on his phone, and his glasses were broken. He also suffered a split lip and a minor concussion.

¶ 8     Pretrial Services gave Davis a four (out of six) for new criminal activity and a three (out of six) for failure to appear. If Davis were to be released before trial, Pretrial Services would recommend maximum conditions.

¶ 9     At the time of the alleged offense, Davis was serving a two-year term of probation for the manufacture or delivery of a controlled substance from 2024. He also had felony convictions in

2021, 2013, 2008, 1999, 1998, 1994, and 1992. The 2008 conviction was for the aggravated battery of a person by striking someone in the face and body with a wooden stick. The 1994 conviction was for armed robbery.

¶ 10    The defense proffered that Davis worked as a security guard at the Dunkin' Donuts inside the CTA station. He is 52 years old and a lifelong resident of Cook County. He and his wife have a one-year-old child.

¶ 11    The circuit court found that the State carried its burden to detain Davis before trial. First, the proof was evident and the presumption great that Davis committed aggravated battery of a transit passenger. Second, Davis posed a real and present threat to the victim and the community because, when the victim sought "refuge," Davis "continue[d] to beat [him] about the face [even] after the uncharged co-defendant had done the same." Third, no condition of release could mitigate the harm Davis threatened, given his alleged acts that day, Pretrial Services assessment, and Davis's long felony history.

¶ 12    Davis moved for relief, arguing the State failed to carry its burden of proof for the three elements, and that the court failed to comply with various statutory requirements and deprived Davis of due process under the law. The circuit court held a hearing and denied Davis's motion.

¶ 13    Davis timely appealed and filed a notice in lieu of a memorandum, asserting he would rely on the contentions he made in his motion for relief. The State filed a memorandum in response.

¶ 14                                            Analysis

¶ 15    Davis argues the State failed to meet its burden to justify pretrial detention, an issue we review *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51 (holding, *de novo* review proper when parties proceed by proffer).

¶ 16    Under Illinois law, pretrial release is the default. 725 ILCS 5/110-2(a) (West 2026). A court may order detention when the State establishes, by clear and convincing evidence, that (i) the proof is evident or the presumption great that the defendant committed a detainable offense, (ii) the defendant poses a real and present threat to the safety of the community based on the specific, articulable facts of the case, and (iii) no combination of conditions can mitigate that threat. *Id.* § 110-6.1(e).

¶ 17    The State charged Davis with aggravated battery of a transit passenger, 720 ILCS 5/12-3.05(d)(7) (West 2026), a detainable offense. 725 ILCS 5/110-6.1(a)(1.5) (West 2026) (including as detainable offenses "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement"). See *People v. Duncan*, 2024 IL App (5th) 240588, ¶ 29 (holding residual clause focuses on whether case-specific conduct threatened or caused great bodily harm).

¶ 18    For the first element, Davis contends the proof is neither evident nor presumption great that he committed the aggravated battery of a transit passenger because the State "relied almost entirely on narrative summaries of the police reports rather than direct evidence." For example, Davis insists the State needed to present "testimony from the victim," "officer testimony," or "authenticated surveillance video" to carry its burden of proof.

¶ 19    Davis overlooks that the Act permits the parties to proceed by proffer. Specifically, "[t]he State or defendant may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2026). At the detention hearing, the State outlined the facts of the offense as reported to the police as well as summarized Davis's lengthy criminal record. Reducing that information into a narrative summary and proffering it to the circuit court

was entirely proper under the Act. See also *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 55 (noting parties may proceed by proffer based on reliable information).

¶ 20    For the second element, dangerousness, Davis contends the State failed to present "individualized" and "forward-looking" evidence. In Davis's view, the alleged offense was a blip in an orderly life characterized by "stable employment, family ties, and ongoing responsibilities."

¶ 21    The alleged facts, combined with Davis's criminal record and probation status, supported the circuit court's dangerousness finding. The court may consider: (i) the nature and circumstances of the offense, (ii) the defendant's history and characteristics, and (iii) whether the defendant was on probation. 725 ILCS 5/110-6.1(g) (West 2026). The court properly noted how Davis helped to beat a man to the point of a minor concussion in a public place during morning traffic. Further, Davis and the victim had no prior contact. The court thus correctly concluded that Davis posed a real and present threat to the victim and the community.

¶ 22    For the third element, threat mitigation, Davis faults the State for presenting no evidence "explaining why standard release conditions such as electronic monitoring *** would be insufficient[.]" In his view, "[t]he record demonstrates that [he] possesses multiple stabilizing factors that strongly support release under supervision."

¶ 23    The specific articulable facts and Davis's criminal record support pretrial detention. The court may consider: (i) the nature and circumstances of the offense, (ii) the weight of the evidence against the defendant, (iii) the defendant's history and characteristics, (iv) the nature and seriousness of the specific, real, and present threat to any person that would be posed by release, and (v) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* § 110-5(a).

¶ 24    Battering someone seeking refuge from battering by others is a serious offense. There is considerable evidence of this alleged offense, including surveillance footage. Davis has committed violent offenses before, as a young adult and recently. Employment at or near the CTA station would put him back at the scene. And his apparent violation of the terms of his probation undermines any confidence that he would comply with conditions short of pretrial release.

¶ 25    For these reasons, the proffer's clear and convincing evidence supports the court's decision. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (defining standard).

¶ 26    Finally, Davis contends the circuit court violated the Act's requirements and entered a detention order in violation of his right to due process of law, issues of law we review *de novo*. *People v. Ramirez*, 2023 IL 128123, ¶ 13. In Davis's view, the circuit court erred by: (i) relying on the State's proffer; (ii) offering no reason why a condition short of pretrial detention would not suffice; and (iii) failing to provide "detailed findings explaining how the State satisfied each element of the detention analysis." But none of Davis's contentions find support in the law or in the record. As we explained, the circuit court properly relied on the State's proffer, and the court gave detailed reasons why the State carried its burden to detain Davis before trial.

¶ 27    Affirmed.