2024 IL App (1st) 240295-U

No. 1-24-0295B

Third Division
May 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 23 MC 1114918 |
| v. | ) ) | The Honorable |
| JAHJUAN GREEN, | ) ) | Maryam Ahmad, Judge Presiding. |
| Defendant-Appellant. | ) ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court's pretrial detention order is affirmed, where (1) the State did not fail to tender witness statements on which it relied to the defense and (2) the circuit court did not abuse its discretion in determining that no less-restrictive conditions could mitigate the danger posed by defendant.

¶ 2    Defendant Jahjuan Green appeals from the circuit court's order detaining him before trial, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant contends (1) that he

was denied a fair hearing where the State failed to turn over witness statements relied on during the pretrial detention hearing and (2) that the circuit court erred in finding that no conditions could mitigate the danger he posed or ensure his appearance at trial. For the reasons that follow, we affirm the circuit court's order.

¶ 3                                    BACKGROUND

¶ 4          On December 7, 2023, defendant was charged by complaint with three felony charges of armed robbery (720 ILCS 5/18-2(a)(2) (West 2022)) and one misdemeanor charge of criminal trespass to a vehicle (720 ILCS 5/21-2(a) (West 2022)), stemming from an incident occurring the previous day.[1] The State filed petitions for pretrial detention with respect to defendant and three codefendants, alleging in defendant's petition that (1) the proof was evident or the presumption was great that defendant had committed a detainable offense, namely, armed robbery, (2) defendant posed a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions could mitigate that risk.

¶ 5          The parties came before the circuit court for a hearing on all four of the State's petitions and, at the commencement of the hearing, defendant's counsel[2] raised an objection to the discovery tendered by the State to the defense. Counsel indicated that she was in receipt of (1) the petition, (2) the arrest report, (3) the case incident report, (4) supplemental reports, (5) criminal background sheets, (6) an inventory list from the police department, and (7) statements from the complaining witnesses and one of the codefendants. With respect to the statements, counsel noted that two of the statements consisted of brief summaries, followed by

---

[1] According to the State's memorandum in the instant appeal, the State later filed a superseding indictment as to the felony charges in case No. 24 CR 0013901, which charged defendant with an additional 26 offenses.

[2] Defendant and one of his codefendants were represented by one public defender, while the remaining two codefendants were represented by a different public defender.

the notation, "see interview for entire statement," suggesting that these were videotaped statements. Counsel, however, indicated that she had not been provided with the full statements, as required by the Act. In response, the prosecutor represented that "the State at the moment did not have access to the videotaped recorded statements. It only has access to the summary of the videotaped recorded statement, therefore that is all I tendered to Defense Counsel." The circuit court found that "discovery has been properly tendered pursuant to the statute," as the State was required to tender what was in its possession which it was intending to rely on, and therefore overruled the defense's objection.

¶ 6    The State's proffer encompassed all four cases and established that, at approximately 9 a.m. on December 6, 2023, the three victims were working as pipefitters on a construction site in Chicago when they observed a black Jeep Grand Cherokee driving past. After the vehicle passed the construction site, it reversed, driving back to the area in which the victims were working. Three of the occupants from the vehicle exited, wearing black ski masks and pointing firearms at the victims; one of the weapons was described as "an AR-15 style rifle handgun." One of the victims dropped the equipment he was holding and raised his hands in the air. Another, upon observing that his coworkers were being held at gunpoint, "rushed to the scene," where one of the offenders pointed a firearm at him.

¶ 7    The offenders removed two pieces of construction equipment from the site, worth a total of $25,000. They placed the equipment in their vehicle, then left the scene. Police arrived shortly thereafter, and the victims provided descriptions of the offenders and the vehicle. The victims also informed the police that one of the pieces of equipment removed by the offenders was equipped with an Apple AirTag. The device allowed the police to track the equipment

3

using GPS technology, and police tracked the equipment to a residential address in Chicago, arriving at the location within 20 minutes of the robbery.

¶ 8        Upon arriving at the residence, officers noticed the black Jeep was parked at the residence, behind a fence. As the officers approached the residence, they observed individuals fleeing on foot from the Jeep, scattering in different directions. After a footchase, all of the individuals observed fleeing from the Jeep were detained and were brought to the police station. The victims each participated in a live show-up occurring approximately 30 minutes after the robbery had occurred and, as relevant to the instant appeal, all three of the victims positively identified defendant by his face and clothing.

¶ 9        Police recovered the Jeep's key fob from one of the individuals and 33 grams of oxycodone from another. The police also recovered a number of items from the scene surrounding the residence, including a Smith and Wesson M&P 15 9-inch barrel rifle from the driveway, a Glock 26 9-millimeter semiautomatic firearm from the patio area, a Glock 30 .45-caliber semiautomatic firearm and two black ski masks from inside the Jeep, and a black hood mask from an unspecified area. The equipment taken from the construction site was also discovered inside the Jeep. The Jeep itself had previously been reported stolen on December 4, 2023.

¶ 10        In addition to its proffer, the State also set forth the criminal histories of all four codefendants. With respect to defendant, he had no felony convictions and only one misdemeanor arrest for reckless conduct in 2016, for which he received a sentence of supervision.

¶ 11        In response to the State's proffer, defense counsel argued that the victims' identifications of defendant occurred in the form of a show-up, which was a "highly suggestive form of identification." Counsel further noted that, while the victims identified defendant by his "face

and clothing," none of the victim statements tendered to the defense contained a description of defendant's clothing, so there was nothing to indicate whether the victims' descriptions were vague or specific, and any facial identification was based on an incident in which the offenders' faces were at least partially covered by a mask.

¶ 12    Counsel also pointed to defendant's limited criminal record and observed that he was a 26-year-old lifelong resident of Cook County who currently lived with his mother, had two children who he supported, and recently obtained a new job. Defendant also attended church and was regularly involved in community events.

¶ 13    Finally, a pretrial officer indicated that defendant's pretrial services public safety assessment returned a score of two (of six) for "new criminal activity" and two (of six) for "failure to appear," and recommended "maximum conditions" if released.

¶ 14    After considering the parties' arguments, the circuit court entered an order granting the State's petition for pretrial detention with respect to defendant. The circuit court found that the State had shown, by clear and convincing evidence, that the proof was evident or the presumption was great that defendant had committed a detainable offense under section 110-6.1(a) of the Code, namely, armed robbery, and that defendant posed a real and present threat to the safety of the community. While the circuit court observed that defendant had a minimal criminal history, had family support, and had a low public safety assessment score, in weighing the nature of the offense, the circuit court found defendant to be a real and present threat to the safety of the public, as "[y]ou were identified by three people as someone who pointed a firearm at them and took property from them."

¶ 15    The circuit court found that, based on its findings, no conditions mitigated the real and present threat to the safety of any person or persons or the community, noting that the

defendants allegedly robbed three individuals at gunpoint, taking valuable equipment from them, which was recovered in a vehicle along with masks and other indicia of a robbery. The circuit court found that, "because of the nature of this offense," there were no conditions which could mitigate the risk to the community. The circuit court therefore ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial.[3]

¶ 16      Defendant timely filed a notice of appeal, and this appeal follows.[4]

¶ 17      ANALYSIS

¶ 18      On appeal, defendant contends (1) that he was denied a fair hearing where the State failed to turn over witness statements relied on during the pretrial detention hearing and (2) that the circuit court erred in finding that no conditions could mitigate the danger he posed or ensure his appearance at trial. We consider each argument in turn.

¶ 19      *Witness Statements*

¶ 20      Defendant first contends he was denied a fair hearing where the State failed to tender the entirety of the witness statements which had been videotaped, instead turning over the summaries. Section 110-6.1(f) of the Code, which governs the conduct of pretrial detention hearings, provides, in relevant part:

> "(1) Prior to the hearing, the State shall tender to the defendant copies of the defendant's criminal history available, any written or recorded statements, and the

---

[3] Defendant's three codefendants, two of whom were on parole at the time of the incident, were also ordered detained pending trial. We note that a different division of this court recently issued an opinion concerning the pretrial detention of one of the codefendants, ultimately reversing on an issue not present in defendant's case. See *People v. Ramyyeh*, 2024 IL App (1st) 240299.

[4] While defendant timely filed his notice of appeal in the circuit court on December 21, 2023, we note that the notice of appeal was not transmitted to the appellate court until February 9, 2024. Accordingly, the record on appeal was not filed until March 28, 2024, and briefing was completed in late April.

substance of any oral statements made by any person, if relied upon by the State in its petition, and any police reports in the prosecutor's possession at the time of the hearing." 725 ILCS 5/110-6.1(f)(1) (West 2022).

Defendant claims that this provision required the State to have turned over the videotaped statements of the three victims and the codefendant, as "[t]he State relied upon those statements."

¶ 21    Defendant's argument requires us to interpret the language of section 110-6.1. When reviewing issues of statutory construction, we do so *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. It is well-settled that "[a] court's fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* The best evidence of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. *People v. Ramirez*, 2023 IL 128123, ¶ 13. The statute must be read as a whole, with all relevant parts considered, and the court "may not depart from the language of the statute by interjecting exceptions, limitations, or conditions tending to contravene the purpose of the enactment." *Id.*

¶ 22    Section 110-6.1(f)(1) identifies two types of evidence which the State is obligated to tender to the defense: (1) the State is required to tender "copies of the defendant's criminal history available, any written or recorded statements, and the substance of any oral statements made by any person," if the State's petition relies on such information; and (2) the State is required to tender "any police reports in the prosecutor's possession at the time of the hearing." 725 ILCS 5/110-6.1(f)(1) (West 2022). Here, the evidence at issue falls within the first category. Thus, we agree with defendant that the question of whether the full witness statements were in the State's possession at the time of the hearing is not the dispositive issue. Instead, the plain

language of the statute makes clear that if the State's petition relied on the statements, the defense was entitled to receive copies of them prior to the hearing.

¶ 23　　An examination of the allegations in the State's petition, however, reveals that there is nothing in the petition which appears to be based on any recorded witness statements. The factual allegations of the petition provide, in full:

> "On December 6, 2023, three victims were robbed at gunpoint by four individuals. The equipment taken from the victims had a gps tracking device on it. Officers relocated to the location of the tracking device and observed the vehicle matching the description of the vehicle used in the robbery. The Defendant was detained in the area after a brief foot chase. The victims of the robbery positively identified the Defendant as the individual who robbed them."

All of the facts supporting these allegations appear in the other evidence tendered by the State, including the arrest report, the incident report, and the supplemental report. Indeed, the State represented at the pretrial detention hearing that it had not been provided with a copy of the recorded statements, so it would have been impossible for the petition to contain allegations based on those statements, apart from the minimal information contained in the summaries, which was largely duplicative of the information contained elsewhere. We therefore cannot find that the State was required to tender the recorded statements to the defense under the circumstances of this case.

¶ 24　　We further observe that, while section 110-6.1(f)(1) requires only that such statements be tendered to the defense "if relied upon by the State in its *petition*" (emphasis added) (725 ILCS 5/110-6.1(f)(1) (West 2022)), the State's proffer at the hearing also primarily appears to have included only information which was already properly disclosed and tendered to defendant.

Specifically, with respect to the identification of defendant, the State's proffer included only that the victims provided descriptions of the offenders and the vehicle, that one of the stolen items was equipped with an AirTag which led police to the vehicle shortly after the robbery, that defendant was observed by police fleeing from that vehicle when they arrived at the scene, and that all three victims positively identified defendant at a show-up based on his face and clothing. This information was contained in the police documents tendered to the defense, and did not contain any details not included in those documents. Thus, there is no indication that the State failed to tender any evidence which it relied upon, and we accordingly cannot find that defendant was deprived of a fair hearing due to the failure to turn over such evidence.

¶ 25 We note that a different division of this court reached the same conclusion for slightly different reasons in the case of one of defendant's codefendants. See *People v. Ramyyeh*, 2024 IL App (1st) 240299, ¶¶ 15-17. In that case, the court found dispositive the fact that the State did not have the videotaped witness statements in its possession at the time of the filing of the pretrial detention petition. *Id.* As noted, under our interpretation of section 110-6.1(f)(1), reliance, not possession, is the dispositive factor on the State's obligation to tender the statements. Under either view, however, the State properly complied with the requirements of section 110-6.1(f)(1) in this case.

¶ 26 *Less-Restrictive Conditions*

¶ 27 Defendant also contends that the circuit court erred in finding that pretrial detention was required. He asserts that no less-restrictive conditions could serve to mitigate the danger he posed or ensure his appearance at trial. The Act provides that a defendant may be denied pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption is great that defendant has committed a qualifying detainable offense, (2)

defendant poses a real and present threat to the safety of any person or persons or of the community, and (3) no condition or combination of conditions can mitigate the threat to the safety of any person or persons or of the community. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 28    On appeal, defendant does not dispute that armed robbery is a detainable offense under section 110-6.1(a) of the Code (see *id.* § 110-6.1(a)(1.5)), nor does he challenge the circuit court's findings that (1) the proof is evident or the presumption is great that he committed the offense and (2) he poses a real and present threat to the safety of the community. Defendant, however, claims that the State failed to establish that no less-restrictive conditions could mitigate such a threat. The question of whether any less-restrictive conditions will mitigate the threat a defendant poses to the community involves the circuit court's reasoning and opinion, as the court is required to balance a number of factors to arrive at a decision which promotes both principles of fundamental fairness and sensible and effective judicial administration. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36; *People v. Schulz*, 2024 IL App (1st) 240422, ¶ 19. Accordingly, we review the circuit court's determination for an abuse of discretion. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the circuit court." (Internal quotation marks omitted.) *Schulz*, 2024 IL App (1st) 240422, ¶ 19.

¶ 29    The available conditions of pretrial release are set forth in section 110-10 of the Code, which provides for both mandatory and discretionary conditions of release. See 725 ILCS 5/110-10 (West 2022). As relevant to the instant appeal, section 110-10(b) permits a circuit court to impose discretionary conditions of release, such as electronic monitoring, "only when it is determined that they are necessary to *** ensure the defendant does not commit any

criminal offense." *Id.* § 110-10(b). Such conditions, however, "shall include the least restrictive means and be individualized." *Id.* In determining which conditions of release would reasonably ensure the safety of the community, section 110-5 of the Code provides a nonexhaustive list of factors a court must consider, including (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the real and present threat to the safety of the community posed by the defendant's release. *Id.* § 110-5(a). In making such a determination, the court may also rely on a regularly validated risk assessment tool. *Id.* § 110-5(b); see also *People v. Keys*, 2024 IL App (1st) 231880-U, ¶ 20 (finding that the circuit court's reliance on the pretrial services public safety assessment was appropriate, as it was specifically authorized by the Act). "[N]o single factor or standard may be used exclusively to order detention," however, and risk assessment tools may not be used as the sole basis to deny pretrial release. 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 30    In this case, defendant contends that the circuit court "openly acknowledged that the sole reason for detaining [defendant] was because of the nature of the offense" and suggests that this operated to condense the three-step analysis into a single step. Defendant is correct that the bare allegations that a defendant has committed a violent offense are not sufficient to establish that pretrial detention is warranted. See *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. We cannot, however, find that defendant's framing of the issue in this way accurately represents the proceedings at the hearing. While the circuit court did emphasize the nature of the offense in finding pretrial detention appropriate, an examination of the record on appeal reveals that the circuit court's pretrial detention decision came after a thorough discussion of all aspects of the offense before it, including specific details as to each of the four defendants.

Even if not expressly labeled as such, the circuit court's analysis encompassed a number of factors identified in section 110-5, including the circumstances of the offense, the strength of the evidence against each defendant, and the defendants' respective criminal histories and backgrounds. See also *Saucedo*, 2024 IL App (1st) 232020, ¶ 49 (observing that the factors listed in section 110-5 are similar to those set forth in section 110-6.1, and that a circuit court's decision as to the availability of less-restrictive conditions has been reviewed in light of the same factors used to make the initial dangerousness determination).

¶ 31    The circuit court noted that the three victims were working at their place of employment when a Jeep pulled up, three men brandishing firearms exited, and those men took expensive construction equipment from the workers at gunpoint; while the circuit court did not expressly mention it, we note that the State's proffer established that the offense occurred at 9 a.m. on a Wednesday morning. The circuit court observed that one of the firearms was identified as an AR-15 style rifle, which was a "very large rifle," further observing that such firearms could be considered "killing machines," as "they were designed to be weapons of war, so it's a very threatening type of weapon." Due to the presence of the AirTag, the police were able to locate the Jeep almost immediately, and the four defendants were all observed fleeing from the vehicle, which contained the stolen equipment along with other indicia of the robbery. With respect to defendant, the circuit court noted that not only was defendant one of the individuals observed by police to be fleeing the Jeep, but defendant was identified by all three witnesses as someone who pointed a firearm at them and took property from them. While the circuit court considered the counterarguments and mitigating evidence as argued by defense counsel, including the "very excellent points" about the suggestiveness of show-up identifications and the lack of details as to the witness identifications, it ultimately determined that the nature of

the offense outweighed this mitigating evidence. We cannot find that this decision constituted an abuse of discretion, and therefore affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 32                                              CONCLUSION

¶ 33       For the reasons set forth above, we affirm the circuit court's order granting the State's petition for pretrial detention, as the State properly tendered all evidence relied on in the petition and the circuit court's finding that no less-restrictive conditions could mitigate the threat posed by defendant did not constitute an abuse of discretion.

¶ 34       Affirmed.