NOTICE
Decision filed 01/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250808-U

NO. 5-25-0808

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Jefferson County. |
| v. | ) ) | No. 25-CF-230 |
| DARIOUS J. POSEY, | ) ) | Honorable Matthew E. Vaughn, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief due to dangerousness are affirmed. The trial court's finding of willful flight was in error and is vacated.

¶ 2    The defendant, Darious J. Posey, appeals the September 29, 2025, order from the trial court of Jefferson County that granted the State's petition to deny pretrial release and the October 6, 2025, denial of his motion for relief and immediate release. For the following reasons, we affirm in part and vacate in part.

¶ 3                                  I. BACKGROUND

¶ 4    On September 26, 2025, the defendant was charged by information with one count of criminal sexual assault, a Class 1 felony, in violation of section 11-1.20(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.20(a)(1) (West 2024)) (count I), and one count of

1

aggravated criminal sexual abuse, a Class 2 felony, in violation of section 11-1.60(d) of the Criminal Code (720 ILCS 5/11-1.60(d) (West 2024)) (count II). The charges allege that, as to count I, the defendant committed an act of sexual penetration against E.O. and used force during the commission of the offense. As to count II, the State alleged that the defendant committed an act of sexual conduct with E.O., who was at least 13 years of age but under 17 years of age when the act was committed, in that the defendant engaged in sexual intercourse with E.O. and the defendant was more than five years older than E.O.

¶ 5    The State filed a verified petition to deny defendant pretrial release the same day, alleging that the defendant was charged with a detainable offense and that his release posed a real and present threat to the safety of any person or persons in the community, pursuant to section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/110-6.1(a)(5) (West 2024). The trial court held a hearing on the State's petition on September 29, 2025.

¶ 6    Before the hearing began, the State said that there was a "necessary amendment" to be added to the verified petition. The State sought to amend its petition by interlineation to add the following language: "No condition or combination of conditions exist which are less restrictive to prevent the defendant from committing further criminal conduct or appearing for further court dates." Defense counsel had no objection to the amendment. The amendment by interlineation is set forth in the report of proceedings; however, a pleading with the amendment is not contained within the common law record.

¶ 7    The State then proceeded by proffer and stated it would be referencing the following documents: a police report, a laboratory report from the Illinois State Police, and a pretrial investigation report. The State proffered that Officer West of the Mt. Vernon Police Department (MVPD) would testify that on January 10, 2025, he took a statement from E.O., stating that on

2

January 9, 2025, she stayed at her sister's residence and was sexually assaulted by the defendant. She said that the defendant, who lived upstairs at her sister's residence, proceeded downstairs and appeared to be intoxicated. He then held her down before penetrating her vaginally without consent and through the use of force. E.O. stated that the defendant pushed down on her chest, and she told him to stop at least 12 times. E.O. was 15 years old at the time of the incident, and the defendant was 28 years old. She collected the clothes she wore during the incident and provided them to law enforcement. She additionally went to the hospital to have a sexual assault kit performed, which was sent off for further analysis. Officer Majors of the MVPD would also testify that he made phone contact with the defendant on January 10, 2025, and the defendant claimed that he went downstairs one time on January 9, 2025, but no sexual contact occurred.

¶ 8    Detective Moreland of the MVPD conducted another interview with E.O. on February 6, 2025. She informed Detective Moreland that when the defendant came downstairs and appeared intoxicated, E.O. was uncomfortable because the defendant became "touchy" with her and she attempted to move away. The defendant, however, moved closer to E.O. and got on top of her, held her down, then proceeded to do "whatever he wanted" to E.O. sexually until she was able to push him off of her after about 25 minutes. E.O.'s sister took her back home the following morning, and E.O.'s boyfriend encouraged her to contact the police. On May 29, 2025, Detective Moreland received the DNA and sexual assault kit test results, which showed a male's DNA, but there was no known substance to cross-reference the results from the kit.

¶ 9    After multiple phone call attempts, the defendant agreed to come to the police department in July, but he failed to appear. Detective Moreland continued calling the defendant and his family members, but the defendant did not return the calls or go to the police department. On September 10, 2025, Detective Moreland made physical contact with the defendant while he was at work. The

3

defendant told Detective Moreland that E.O. did stay at the home with her sister and that he lived in the upstairs portion of the home with his girlfriend and their children. He stated that his girlfriend informed him that E.O. accused him of sexual assault and he denied the allegations. He told Detective Moreland that there were multiple individuals present in the house at the time, and the layout of the house would make it "difficult" for any significant activity to go unnoticed. The defendant denied any physical contact with E.O. and agreed to provide a DNA sample, which Detective Moreland then collected.

¶ 10    On September 23, 2025, Detective Moreland received the results from the defendant's DNA swab, which indicated a "hit" on the sexual assault kit. On September 25, 2025, Detectives Moreland and Kane went to the defendant's residence, and he agreed to go with them to the police station to give a statement. After being advised of his *Miranda*[1] rights and agreeing to speak with the officers, the defendant told the officers again of the living arrangements in the residence and that E.O. was babysitting her sister's children that evening. The detectives asked the defendant three times if he ever had intercourse with E.O., which he denied each time. He stated that previously, E.O. made "advances" toward him several times, and that she would change or remove her clothing when no other household members were home. Detective Moreland then informed the defendant of the DNA results they received from the Illinois State Police Lab. The defendant initially continued his denials, but then told officers that he was smoking and drinking with E.O., and she began to make physical advances toward him. He claimed to have told E.O. "no" several times but then engaged in sexual intercourse with her. The defendant told the detectives that he was afraid of getting in trouble because he had a girlfriend, and after the incident, he discovered E.O. was underage.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 11    The State presented no further evidence and proceeded to argument, stating that the defendant committed a detainable offense, being criminal sexual assault, which is a forcible felony enumerated in the Code. E.O. cooperated completely, including reporting the offense, and participating in a sexual assault examination and kit. The sexual assault kit then identified the defendant's DNA, corroborating E.O.'s account. The State said that when questioned by detectives, the defendant denied any form of sexual contact with E.O. seven times, and he only admitted to any contact after he was informed of the sexual assault kit results.

¶ 12    The State argued that the defendant's release would be detrimental to E.O. because the defendant could potentially reoffend, attempt to coerce a statement from E.O., or threaten E.O. The State said that no conditions would sufficiently ensure that the defendant would not reoffend, that he would make all his court dates, or would prevent any harm, physical or emotional, to E.O. The State argued that even though the defendant did not have any prior convictions and only one pending case,[2] the defendant's pretrial release should be denied.

¶ 13    The defendant's counsel proffered that the defendant was 29 years old, resided in Mount Vernon, Illinois, with his girlfriend, two of her children, and two children that they shared together, aged 2, 9, 12, and 13. The defendant completed high school and had lived in the area for five years. He was employed, with two jobs. The defendant was not on pretrial release, parole, or work release, did not have any prior convictions, and had no failures to appear. The defendant scored a 4 out of 14 on the Virginia Pretrial Risk Assessment Tool (VPRAI-R), which was the second lowest category for recidivism. The defendant's counsel requested release with conditions, specifically home confinement with electronic monitoring, and a no contact order with E.O.

_____

[2]The defendant was charged with battery in Jefferson County case No. 25-CM-38. The offense occurred after the sexual assault but before the defendant was charged in the present case.

Further, defense counsel stated that the defendant could reside at an address other than his home, if requested. The defendant also argued that he was not a flight risk because he had no driver's license, passport, or vehicle. He needed to continue working to support his girlfriend and their children. The parties presented no further evidence.

¶ 14    The trial court found that there was clear and convincing evidence that the proof is evident or the presumption great that the defendant committed both offenses, which were qualifying offenses under the Code. The trial court also found that no condition or combination of conditions existed to prevent the defendant from committing further criminal conduct or appearing for further court dates. The trial court's oral pronouncements specifically highlighted the evidence of the defendant's DNA on the test kit and that no conditions, including home confinement, would prevent further criminal conduct. The trial court also stated that the defendant was a flight risk due to his minimal contacts in the area. The trial court ordered the defendant detained pending trial. The trial court's written order indicated that the court's reasons for concluding that the defendant should be denied pretrial release was to "protect E.O. physically and emotionally," and to "secure presence for court." Additionally, the trial court indicated less restrictive conditions would not assure the defendant's appearance in court because of the defendant's "lack of long term ties to the community, nature of the offense, risk of flight given the potential sentencing range."

¶ 15    On October 1, 2025, the defendant filed a motion for relief and immediate release. The motion alleged that the State failed to prove by clear and convincing evidence that the proof is evident or presumption great that the defendant committed a qualifying offense, that he posed a real and present threat to the safety of any person or persons or the community, that no combination of conditions can mitigate the real and present threat to the safety of any person or persons, that he posed a real and present threat of willful flight, and that no condition or conditions could mitigate

6

the threat of dangerousness or willful flight. The motion argued that the trial court erred in failing to consider the defendant's ties to the community being his two children, his employment at two separate jobs to support his family, his lack of criminal history, his willingness to abide by any terms of release, that no weapon was used, and that the defendant did not have a license or vehicle, as to his willful flight.

¶ 16　On October 6, 2025, the trial court held a hearing on the defendant's motion for relief. The defendant's counsel proffered that the defendant lived in Mount Vernon with his significant other, her children, and his two biological children. He was 29 years old, a high school graduate, and was employed with two jobs. The defendant had no criminal history, was not on pretrial release, parole, or work release, had never failed to appear at a court proceeding, and did not possess a driver's license or passport.

¶ 17　Defense counsel then argued that the defendant did not pose a flight risk because he had "virtually no way to flee the jurisdiction" due to not having a driver's license or passport. The defendant additionally worked two jobs to support his family. The defendant scored in the second lowest ranking for recidivism in the VPRAI-R, and the defendant argued that he was not a danger to repeat the alleged act. As such, the defendant's counsel asked that the defendant be released with the condition of home confinement with electronic monitoring, and a no contact order with the victim. Also, the defendant had an alternative address where he could reside, apart from the address that was involved in the alleged offense, where the victim did not reside.

¶ 18　The State proffered the same information from the original detention hearing, stating that E.O., a 15-year-old, reported that the defendant sexually assaulted her when he came into the part of the shared home where she was babysitting. The defendant appeared intoxicated and, as he made advances toward E.O., he did not listen to E.O. when she told him "no," and he proceeded

to sexually assault her. E.O. subsequently submitted her clothing to law enforcement and went to the hospital to complete a sexual assault kit, which ultimately tested positive for the defendant's DNA. When detectives questioned the defendant, he denied any sexual contact with E.O. whatsoever, until he was presented with the DNA results from the sexual assault kit.

¶ 19   The State argued that the defendant continued to remain a threat to E.O., both physically and emotionally. The State said that the defendant's release would cause emotional damage to E.O. and a lack of confidence in the legal system if the defendant was released after E.O. completed all the steps necessary for law enforcement to identify the defendant and link him to the offense. The State also argued that the defendant resides with other minor children, aged 13, 12, 9, and 2, only two of whom were his own children. The State argued that no less restrictive means existed to ensure that the defendant would not flee the jurisdiction or commit any further crimes. As such, the defendant should be denied pretrial release. The defendant briefly responded, stating that while the alleged offense occurred on January 9, 2025, the defendant was not arrested until September 2025, over eight months later, and "the alleged victim survived that period of time." Further, there was no evidence "that there were any problems during that period of time."

¶ 20   The trial court stated that it had considered all of the factors listed in the motion for relief. The trial court also considered that the offense was expressly identified in the Code as a qualifying offense. The trial court denied the defendant's motion for relief. The defendant timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22   The defendant filed his motion for relief on October 1, 2025, arguing the points referenced above. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) on behalf of the defendant. On appeal, the defendant argues that the State failed to

prove by clear and convincing evidence that (1) the defendant poses a real and present threat to the safety of any person or persons or the community, (2) he has a high likelihood of willful flight, and (3) no condition or combination of conditions can mitigate any risk posed by his release. The defendant does not challenge the fact that the State proved, by clear and convincing evidence, that the proof is evident or the presumption is great that the defendant committed a qualifying offense. This issue has thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal.").

¶ 23     Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e), (f) (West 2024). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2024). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the

community (725 ILCS 5/110-6.1(a)(1)-(7) (West 2024)) or there is a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8) (West 2024)).

¶ 24 Our standard of review of pretrial release determinations is twofold. Where the trial court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Alternatively, where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ *de novo* review.

¶ 25 The pertinent statute provides a nonexhaustive list of factors courts should consider in determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence or a sex offense; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access

10

to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior (725 ILCS 5/110-6.1(g)(1)-(9) (West 2024)). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 26    We now consider, as the trial court did, the record presented by the State. In the present matter, the defendant was charged with one count of criminal sexual assault, a Class 1 felony, and aggravated criminal sexual abuse, a Class 2 felony. Both charges are sex offenses, which the Code explicitly states may be considered when determining dangerousness. See 725 ILCS 5/110-6.1(g)(1) (West 2024). The defendant was a 28-year-old man at the time of the offense, capable of physically overtaking the victim, which may also be considered under the Code. 725 ILCS 5/110-6.1(g)(4) (West 2024). The victim was a 15-year-old girl who was babysitting for her sister when the offense occurred, unable to leave the home until her sister returned from work the following day. The disparity in age between the defendant and the victim created a violent and abusive encounter, where the defendant was said to have held the victim down against her will. The defendant's release would also pose a risk to E.O. in that he could continue to act as a threat toward her or harm her. Further, the defendant denied any sexual contact with the victim until presented with the DNA test results, after which the defendant then accused the victim of making advances toward him, claiming she initiated the sexual offense.

¶ 27    The defendant was employed at two jobs at the time of his arrest and did not have any previous convictions. However, these facts, along with the other factors presented during the hearings, do not overcome the threat the defendant posed to the victim and to the community. The

11

defendant's conduct toward E.O. and the continued risk that he posed to E.O., because he was well-acquainted with her and knew her sister, supported a finding of a threat to E.O. and the community. Viewing the evidence in its entirety, we find that the State met its burden of proving by clear and convincing evidence that the defendant posed a real and present threat to the safety of an individual or the community.

¶ 28    Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[3] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024). The Code lists no singular factor as dispositive. See 725 ILCS 5/110-5(a) (West 2024). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

¶ 29    The defendant argues that sufficient conditions exist that would mitigate his risk, namely, home confinement with electronic monitoring and no contact with the victim. The defendant was charged with criminal sexual assault and aggravated criminal sexual abuse, both felonies and serious offenses. The State presented significant evidence to substantiate the defendant's involvement in the offense, including a positive DNA identification of the defendant related to the sexual assault kit. The defendant's release would pose a risk to the victim's emotional and physical safety, even with a no contact order. The offense occurred within the defendant's home, where he resided with other children, two of his biological children, and two of his girlfriend's children. Considering that the sexual offenses alleged involved the violent and abusive behavior toward a young woman, and the weight of the evidence is great, we find that no condition or combination of conditions would mitigate the defendant's risk to the victim and the community.

¶ 30    In addition to his foregoing arguments, the defendant argues that the State failed to show by clear and convincing evidence that the defendant had a high likelihood of willful flight to avoid prosecution. In order to fully review this claim, we must first address the State's verified petition to deny pretrial release. The petition stated that the defendant was charged with a detainable offense, and that his release posed a real and present threat to the safety of any person or persons or the community, also known as the "dangerousness" standard. 725 ILCS 5/110-6.1(a)(5) (West 2024). The verified petition, however, does *not* allege that the defendant had a high likelihood of willful flight. 725 ILCS 5/110-6.1(a)(8) (West 2024).

¶ 31    Looking to the plain language of section 110-6.1(d)(1), the Code states:

   "The petition shall be verified by the State and *shall state the grounds* upon which it contends the defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific

13

articulable facts or flight risk, as appropriate." (Emphasis added.) 725 ILCS 5/110-6.1(d)(1) (West 2024).

Our primary objective when construing a statute is to give effect to the legislature's intent, best determined by giving the statutory language its plain and ordinary meaning. *People v. Hunt*, 234 Ill. 2d 49, 59 (2009). The word "shall" has been construed as a clear expression of legislative intent to impose a mandatory obligation. *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001). The language of the Code thus requires that the verified petition state the grounds upon which the defendant shall be denied pretrial release.

¶ 32    In the present case, the verified petition does not allege that the defendant should be denied pretrial release because the defendant was a flight risk. The petition only alleges the dangerousness standard as the basis for denial of pretrial release. As such, the trial court erred in considering any factors related to the detention of the defendant based upon him being a flight risk. Further, the trial court erred in making any finding that the defendant was a flight risk, as this was not an allegation in the verified petition, although we recognize that both parties argued whether the defendant should be considered a flight risk.

¶ 33    Assuming *arguendo*, even if the verified petition had included the allegation that the defendant posed a willful flight risk, and the arguments of counsel were appropriately considered, the present record indicates that the trial court erred in entering any findings based upon the defendant being a willful flight risk. When the State seeks to deny pretrial release on the basis that a defendant poses a risk of willful flight from prosecution, the State must establish by clear and convincing evidence (a) that the proof is evident or the presumption great that the defendant committed a detainable offense; (b) that defendant "has a high likelihood of willful flight to avoid

14

prosecution," if released; and (c) and that no condition or combination of conditions case mitigate the defendant's risk of willful flight. 725 ILCS 5/110-6.1(a)(8), (e)(1)-(3) (West 2024).

¶ 34    The Code defines "willful flight" as:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2024).

When determining whether a defendant may be detained based on a "high likelihood of willful flight to avoid prosecution," the circuit court is to consider only "intentional conduct with a purpose to thwart the judicial process to avoid prosecution," as provided in the Code's definition of "willful flight." 725 ILCS 5/110-1(f) (West 2024). A thwarting of the judicial process generally refers to "a defendant's willful avoidance of prosecution in court by failing to appear at court hearings and similar behaviors." *People v. Quintero*, 2024 IL App (1st) 232129-U, ¶ 22; *People v. Sims*, 2024 IL App (4th) 231335-U, ¶¶ 28-30.

¶ 35    In the present case, before the detention hearing began, the State indicated that there was a "necessary amendment" to be made to the verified petition, and that the State wanted to add the following language to the petition: "No condition or combination of conditions exist which are less restrictive to prevent the defendant from committing further criminal conduct or appearing for further court dates." It is important to note that this language is not the standard language for proving willful flight at a detention hearing. If it was the intent of the State to prove willful flight,

15

such language did not adequately reflect the definition in the statute, and the State did not use the correct standard related to willful flight in the initial detention hearing.

¶ 36   In addition to the State failing to provide the correct grounds for relief in the verified petition and offering an amendment with the wrong standard for willful flight, the trial court also erred in its findings related to the defendant's flight risk. The trial court found that the defendant was a flight risk because "he does not have any family in the Mt. Vernon area," other than his two children. Additionally, the trial court indicated the defendant had only been a resident of the county for about five years. In its written order, the trial court specifically said that the defendant was a flight risk based on the following: "lack of long term ties to the community, nature of the offense, risk of flight given potential sentencing range."

¶ 37   The trial court's written order found a risk of flight due to the potential sentencing range of the offenses. The State never provided the sentencing ranges for the offenses during either hearing, and did not argue that the sentencing range contributed to the defendant's flight risk. The trial court not only considered factors that were not presented at either of the defendant's hearings, but also committed error by using the sentencing range in support of its findings.

¶ 38   The Code presumes that pretrial release is available for all criminal defendants. Pretrial release must not, however, be predicated exclusively upon a finding that the defendant committed a detainable offense. 725 ILCS 5/110-6.1(e) (West 2024); *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. "More is required" than stating the basic elements of a detainable offense, such as its sentencing range. *Stock*, 2023 IL App (1st) 231753, ¶ 18. If the sentencing range for an offense is allowed as the means for detention under the flight risk standard, then every offense with a potentially high sentencing range would be detainable. The trial court's reasoning is clearly at odds with the Code's presumption of eligibility for all defendants, and the plain language of the Code

indicates more is required. 725 ILCS 5/110-6.1(e) (West 2024); *People v. Ramirez*, 2023 IL 128123, ¶ 13 ("The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning.").

¶ 39 The trial court's oral and written findings were thus not based on the meaning of willful flight as defined within the Code of "intentional conduct with a purpose to thwart the judicial process to avoid prosecution." 725 ILCS 5/110-1(f) (West 2024). The State did not present any evidence of willful avoidance of prosecution by failing to appear at court hearings or similar behaviors intended to thwart the judicial process to avoid prosecution. Therefore, the trial court had no basis for its findings that it had considered the definition of willful flight as set forth in the Code. As such, the trial court erred when it relied on the sentencing ranges for the felonies charged as a basis for finding the defendant posed a risk of willful flight if not detained. We thus vacate the trial court's finding that willful flight was a basis for detaining the defendant.

¶ 40                                    III. CONCLUSION

¶ 41 We affirm the trial court of Jefferson County's orders detaining the defendant based on the dangerousness standard and that no conditions would mitigate the risk posed by the defendant. We vacate the orders detaining the defendant based on the willful flight standard.


¶ 42 Affirmed in part and vacated in part.

17